## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

DANIEL JAMES SILVA,

      Plaintiff,

v.                                                                  Case No.  4:19-cv-286-RH/MJF

TAYLOR ALISON SWIFT,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

    Defendant Taylor Alison Swift has moved to have the District Court declare Plaintiff Daniel James Silva a vexatious litigant. (ECF No. 75). For the reasons set forth below, the undersigned recommends that the motion be granted in part and denied in part, that the District Court declare Silva to be a vexatious litigant, and that the Court enter an injunction requiring Silva to obtain approval from the Court before filing additional action against Swift and related persons and entities.[1]

---

[1] The case was referred to the undersigned to address preliminary maters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b); Fed R. Civ. P. 72(b).

## I.    Background

This civil action is the sixth action that Silva has initiated against Swift, her attorneys, or TAS Rights Management, LLC. The history of Silva's litigation with Swift, her company, and her attorneys is relevant to Swift's motion.

### A.    *Silva v. Swift*, No. 3:17-cv-292-HES/MCR (M.D. Fla. Mar. 13, 2017) ("*Silva I*")

On March 13, 2017, Silva commenced his first civil action against Swift. *Silva I*, No. 3:17-cv-292-HES/MCR (M.D. Fla. Mar. 13, 2017) (Doc. 1).[2] In 2014, Taylor Swift, who is a singer-songwriter, released an album that included in its title the digits "1989." Silva alleged in his complaint that "18 months ago I created 1989shirts.com. The Defendant has a pending trademark for 1989 (8636039) as a result I shutdown 1989shirts. But you can't own a number which cost me to loose 18 months of revenue in the amount of 300,000 USD."[3] (Doc. 1 at 4). Among other

---

[2] This court takes judicial notice of the documents referenced below filed in the U.S. District Courts for the Middle and Northern Districts of Florida. Under Federal Rule of Evidence 201(b), a court may "take judicial notice of facts that are not subject to reasonable dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999). The parties should have received copies of these documents. Regardless, the documents can be obtained from the clerk of the respective court. Documents filed in Silva's prior cases are delineated "Doc." Documents filed in the present case are delineated "ECF No."

[3] Silva's submissions to this and other courts frequently contain spelling, grammatical, and typographical errors. All such errors in quotations attributed to Silva in this report and recommendation are in the original documents unless otherwise noted.

forms of relief, Silva requested "atonement in the amount of 7,700,000 (seven million seven hundred thousand dollars u.s.d.) for which 51% to be donated to the charity of myself Daniel Silva's choice." (*Id.* at 6).

While litigating his case, Silva inundated the court with unnecessary filings including various notices, affidavits, and motions. (Docs. 5-10, 12-15, 17-20). After Swift filed a motion to dismiss for insufficient service of process, (Doc. 22), United States District Judge Harvey E. Schlesinger ordered Silva to show cause why the complaint should not be dismissed for failure to prosecute in light of Silva's failure to effect service of process. (Doc. 23). Silva then voluntarily dismissed that case. (Doc. 24). In his notice of voluntary dismissal, Silva utilized profane language and derided Swift's mental abilities. (*Id.* at 6) ("someone Fucked up somewhere along the line and the mistake will end up at MS swift's feet"); (*Id.* at 4) ("if I can recall [Swift] left school early to become a musical phenomenon so I think she still has the mind of a child I don't think she ever grow up mentally and realizes the mess she's in legally").

**B.    *Silva v. Swift*, No. 3:17-cv-814-MMH/JRK (M.D. Fla. July 17, 2017) ("*Silva II*")**

Four days after *Silva I* was dismissed, Silva initiated his second lawsuit against Swift. *Silva II*, No. 3:17-cv-814-MMH/JRK (M.D. Fla. July 17, 2017) (Doc. 1). Silva realleged the facts in *Silva I*, and further stated that:

> I obtained the online store 1989Shirts.com, I had bought the domain
> name on 4-3-2015 with full intention of selling shirts that display the
> year 1989 the year of my birth, but by the time I bought all material for
> lunching the site Shirts ect. I noticed the [Defendant] posted a TM next
> the number 1989 on many of her items figuring she was obtaining a
> legal trademark for 1989, so I postponed selling 1989 shirts fearful of a
> defendant filing a lawsuit against me . . . Come to find out the trademark
> in question is fraudulent and illegitimate because a person can't own a
> number standalone
>
>  . . .
> I, believe my civil rights have been violated and fringed apon . . . due
> to the defendant and her pending illegitimate trademark.

(*Id.* at 2, 6).

Thereafter, Silva filed a motion to proceed *in forma pauperis* and twice amended his complaint.[4] (Docs. 2, 4, 6). Silva's second amended complaint was forty-five pages in length and included seventy-five pages of exhibits. (Doc. 6). Silva alleged that Swift's trademarks were "fraudulent" pursuant to 15 U.S.C. § 1125; 37 C.F.R. § 1.56; and 15 U.S.C. § 1120. Silva requested damages totaling "80 million dollars. (*Id.* at 43).

Magistrate Judge James Klindt recommended that Silva's second amended complaint be dismissed for frivolity and failure to state a viable claim on which relief may be granted. (Doc. 9). Silva filed an objection to Judge Klindt's report and

---

[4] Magistrate Judge James R. Klindt directed Silva to file a second amended complaint because his initial complaint "appeared subject to dismissal for frivolity and failure to state a viable claim upon which relief may be granted." (Doc. 9 at 1-2).

recommendation that spanned 167 single-spaced pages. (Doc. 10). United States District Judge Marcia Morales Howard overruled Silva's objections and noted that, in addition to lacking merit, Silva's objections entailed "over 160 pages of single spaced stream of conscious rambling." (Doc. 13 at 2). Judge Howard stated: "At times, Plaintiff cites legal authority, although much of it has no applicability to the issues before the Court. At other times, he delves into lengthy personal discussion of his life and his thoughts regarding the Defendant." (*Id.*). Judge Howard adopted Judge Klindt's report and recommendation and dismissed the case without prejudice. (*Id.*).

### C.    *Silva v. TAS Rights Mgmt., LLC*, No. 3:18-cv-688-MMH/JRK (M.D. Fla. May 25, 2018) ("*Silva III*")

Less than one month after Judge Howard dismissed *Silva II*, Silva initiated a lawsuit against Swift's company—TAS Rights Management, LLC ("TASRM").[5] *Silva III*, No. 3:18-cv-688-MMH/JRK (M.D. Fla. May 25, 2018) (Doc. 1). The allegations contained in *Silva III* are substantially the same as those in *Silva II*. Specifically, Silva alleged that TASRM, at the direction of Swift, fraudulently procured the relevant trademarks.

---

[5] Silva alleged that "TAS" in "TAS Rights Management, LLC" stands for "Taylor Alison Swift." (*Silva III*, Doc. 1 at 2).

After filing his complaint, Silva inundated the court with various unnecessary motions, responses, affidavits, and supplements. *See* (Docs. 6, 16-17, 20-21, 24-27, 32, 41-42, 52, 55, 57, 59, 61-65). Specifically, Silva filed an amended complaint, a motion for partial summary judgment, three supplements, seven notices, a motion for sanctions, a motion to recuse, and a motion for declaratory judgment.[6] On July 21, 2018, TASRM moved for a protective order due to harassment by Silva. (Doc. 22). In support of its motion, TASRM attached seventeen emails that Silva sent to Swift and TASRM's attorneys, James Douglas Baldridge and Katie Wright Morrone. (*Id.* at 3-4).

These emails are rife with insults, expletives, and general incivility. Here are a few examples:

- "keep ignoring me asshole and the next call I make ill be the FBI . . . . ill give [Swift] one more chance to settle before I destroy her life completely!!!!!!!" (Doc. 22-1 at 5).

- "ive been committing (psychological warfare) - actions intended to reduce an opponent's morale. for over 2 years now . . . just know I made this (version of Alison) and I can easily destroy her in court and reduce her to an inept soulless being." (Doc. 22-2 at 8).

- "u ask for a 2 month extension to get married, what fucking world do u think we live in ? this isent a Liberal communist feminist society

---

[6] On September 14, 2018, Judge Morales Howard struck Plaintiff's Supplement (Doc. 42) from the electronic docket for attempting to amend his complaint without complying with the requirements of Rule 15 of the Federal Rules of Civil Procedure. (Doc. 43). On December 11, 2018, Judge Morales Howard struck Silva's notice (Doc. 59) from the electronic docket for failure to comply with the Local Rules for the United States District Court for the Middle District of Florida. (Doc. 60).

anymore sweetheart this is trumpland now lol and when we go to trail ill make shur the jury is full of women minorities because we all know how much female minorities loves rich pretty white girls like (swift) lol the jury will look like a social security office waiting room." (Doc. 22-3 at 2-3).

- "Im going to fecking legally obliterate your client in the court room." (Doc. 22-5 at 2).

- "before u go crying to the judge again like 2 fucking retarded children . . . now to you doug who acts like a childish jackass . . . and you katie who acted like a vindictive bitch" (Doc. 22-10 at 2, 6).

- "but dont worrie ill about to file a supplement to state that my psychological warfare caused your defendant to go temperately insane and that [female defense counsel] was a stupid women that was in a mans job and should be home cooking and cleaning . . . she should quit pretending to be a good lawyer and go find a husband and have kids before her eggs dry up." (Doc. 22-10 at 6).

- "tell [Swift] to enjoy fucking prison." (Doc. 22-13 at 4).

In Silva's response to TASRM's motion for a protective order, Silva stated that his inappropriate communication with defense counsel via email "was an elaborate hoax with one simple goal to commit psychological warfare against the defendant and [defense counsel]." (Doc. 27 at 16). On August 16, 2018, to address Defendant's motion for a protective order, Judge Klindt conducted a hearing that required 1.5 hours. (Doc. 33). During the hearing regarding Defendant's motion for a protective order, the magistrate judge warned Silva that the use of inappropriate language, threats, or harassment could result in the court dismissing Silva's case. (Doc. 36 at 49-50); (Doc. 66 at 4).

In light of Silva's conduct, Judge Klindt granted TASRM's motion for a protective order. The order stated: (1) "Plaintiff shall not communicate with Defendant, its affiliated companies, agents, or related individuals"; (2) "To the extent communications with Defendant are necessary, Plaintiff shall communicate only with James Douglas Baldridge, Defendant's counsel"; (3) "All communications with Mr. Baldridge shall be in writing"; and (4) "Plaintiff's communications with Mr. Baldridge shall not contain any inappropriate statements, threats of any kind, or insults. Plaintiff shall conduct himself with civility, respect, and proper behavior." (Doc. 34 at 2).

On September 10, 2018, Silva requested a stay of *Silva III*. (Doc. 41). The magistrate judge granted the request and stayed the matter until January 30, 2019. In the order, the court issued the following directive:

> During the pendency of the stay, Plaintiff shall not file any additional pleadings, motions or "supplements" in this matter and shall have **NO** contact with Defendant, its counsel, or Taylor Swift. **VIOLATION OF THIS ORDER MAY RESULT IN THE DISMISSAL OF THIS ACTION.**

(Doc. 46).

On November 2, 2018, Defendant filed a motion for contempt, sanctions, and dismissal with prejudice. (Doc. 48). In its motion, Defendant alleged that Silva blatantly disregarded the court's order that Silva not contact TASRM, its counsel, or Swift. (*Id.*). According to a decision issued by Judge Howard, "Plaintiff willfully

and egregiously violated the Court's Orders by driving from Florida to Tennessee in an attempt to make contact with Taylor Swift." (Doc. 66 at 6). Judge Howard found that Silva "drove to the home of Swift's mother in Tennessee and delivered a package containing a cell phone, a photograph, a stuffed animal, and a letter addressed to Swift, inviting her to text him. (*Id.*). Silva also sent eleven emails to defense counsel informing counsel of his plans and requesting contact with Swift. (*Id.*). For example, Silva sent the following email to defense counsel in direct contravention of the magistrate judge's order

> I don't think Alison has the courage to meet me face to face . . . im putting my lawsuit on the line to prove a point if u try to get case dismissed off this ill appeal I don't care about case anymore I never did I only cared about saving the family I love life is more then money and fame im calling out Alison swifts courage (meet me at the gate Alison on sunday) if u have the guts sunday at 3 . . . ."

(Doc. 48-4 at 2).

In numerous emails to defense counsel, Silva conceded that he knew that his conduct violated the magistrate judge's order and he understood this could result in the district court dismissing *Silva III*.[7] Silva explicitly stated that he would continue to violate the magistrate judge's order. *See* (Doc. 52 at 2) ("<u>When I think to myself</u>

---

[7] Silva has not disputed that he was the author of the emails quoted and discussed in this report and recommendation. *See* Silva's "Response to Motion for Protective Order" (Doc. 27 at 12) ("When I look back on the improper [communication] I have made with the defendant and her council u need to look at it in its context this is my 3rd lawsuit again the defendant spawning nearly 15 months now . . . .").

did I just blow a 100 million dollar lawsuit to show Alison swift kindness, I think to myself was it worth it and under the same circumstances would I do it again ? the answer is yes.") (emphasis in the original); (Doc. 55 at 5) ("I only broke your order judge Howard to try to protect Alison swift because I felt sorry for her, and under the same circumstances would do it again.").

Furthermore, in response to Defendant's motion for contempt, sanctions, and dismissal with prejudice, Silva filed a frivolous motion for sanctions, (Doc. 55), in which he asked the district court to "sanction lawyer James Douglas Baldrige for [several] felonies." (*Id.* at 1). In that motion, Silva explicitly admitted that his litigation was simply part of a campaign of psychological warfare against Swift. (*Id.* at 5) ("3 years ago when I started to contact [Swift] over her fraudulent mark she was weak and pathetic never standing up for herself . . . it drove me crazy to see such a lovely talented women be so weak so I began a campaign of psychological warfare against swift.").

Judge Howard dismissed *Silva III* after she determined—based on Silva's deliberate and repeated violations of court orders—that only dismissal with prejudice would deter and properly punish Silva for his contumacious behavior. (Doc. 66 at 10-12). Silva appealed the dismissal to the United States Court of Appeals for the Eleventh Circuit. (Doc. 67). The Eleventh Circuit dismissed the

appeal when Silva failed to prosecute it. *See Silva v. Tas Rights Mgmt., LLC*, No. 19-10629 (11th Cir. Apr. 17, 2019).

**D.    *Silva v. TAS Rights Mgmt., LLC*, No. 3:19-cv-354-TJC/MCR (M.D. Fla. Feb. 27, 2019) ("*Silva IV*")**

Just three weeks after Judge Howard dismissed *Silva III*, and while his appeal was pending in the Eleventh Circuit, Silva initiated another civil action against TASRM. *Silva IV*, No. 3:19-cv-354-TJC/MCR (M.D. Fla. Feb. 27, 2019) (Doc. 1). Silva's allegations were substantially the same as those in his prior cases, but Silva also attempted to assert claims based on federal criminal statutes. He asserted that the following individuals had committed criminal acts in violation of federal law: TASRM, Swift, Swift's counsel (James Douglas Baldridge), and the United States District Court Judge who presided over *Silva II* and *III*—Judge Marcia Morales Howard. (Doc. 1). Consistent with his conduct in his prior cases, Silva filed various irrelevant notices, supplements, and certificates as well as a motion for sanctions, a motion to strike, a motion for recusal, and an amended complaint. (Docs. 6-10, 21, 27-32).

TASRM moved to dismiss Silva's complaint and to declare Silva a vexatious litigant. (Doc. 19). In that motion, TASRM attached fifteen emails that Silva had sent to defense counsel since *Silva III* was dismissed. (Doc. 19 at 18-20). United States District Judge Timothy J. Corrigan granted Defendant's motion to dismiss, with prejudice, for failure to state a claim. (Doc. 33 at 5). However, the court

determined that "[a]lthough plaintiff's communications with defendant's counsel have been harassing and threatening, his litigation efforts have not escalated to the point where the Court would take the extraordinary measure of barring him from filing further lawsuits." (*Id.* at 4).[8] The court, therefore, denied the motion to declare Silva a vexatious litigant. (*Id.* at 5).

### E.  *Silva v. Baldridge*, No. 4:19-cv-290-AW/CAS (N.D. Fla. June 21, 2019) ("*Silva V*")

Approximately five weeks after the district court dismissed *Silva IV*, Silva filed a lawsuit in the Northern District of Florida naming three defendants: Douglas Baldridge, Katie Wright Morrone, and Venable, LLP.[9] *Silva V*, No. 4:19-cv-290-AW/CAS (N.D. Fla. June 21, 2019) (Doc. 1). Silva alleged that these defendants conspired to deprive him of his Fifth and Fourteenth Amendment right to due process by filing a motion to dismiss in *Silva III*. (*Id.* at 6). Silva also alleged that Baldridge violated various federal criminal statutes and canons of professional responsibility. United States Magistrate Judge Charles A. Stampelos ordered Silva

---

[8] Furthermore, Judge Corrigan stated that "To the extent plaintiff claims that Judge Howard, defendant's lawyer or Taylor Swift (none of whom are defendants here) engaged in obstruction of justice and/or RICO violations based on their conduct in plaintiff's earlier lawsuits, even assuming those allegations were related to any conceivable civil claims, they are baseless and frivolous on their face and belied by the judicial record of those earlier cases." (Doc. 33 at 3 n.3).

[9] Baldridge and Morrone are attorneys who have represented Swift throughout her litigation with Silva.

to file an amended complaint because he had "not stated a claim which would entitle him to relief." (Doc. 4). On November 12, 2019, Silva filed an amended complaint and named five defendants: Swift, TASRM, James Douglas Baldridge, Katie Wright Morrone, and Venable, LLP. (Doc. 25).

On December 3, 2019, Judge Stampelos issued a report and recommendation in which he recommended that Silva's amended complaint be dismissed for failure to state a claim upon which relief can be granted and because Silva's claims against Swift and her management company "are barred by res judicata." (Doc. 27). Additionally, Judge Stampelos noted that Silva was attempting to "judge shop" and warned Silva that judge shopping would "not be tolerated." (*Id.* at 5). In response to Judge Stampelos's report and recommendation, Silva moved to dismiss the action and accused Judge Stampelos of violating various federal criminal statutes. (Doc. 28). Judge Stampelos construed Silva's motion to dismiss as a notice of voluntary dismissal, which Judge Stampelos accepted. Judge Stampelos vacated his report and recommendation and ordered the clerk of the court to close the case file. (Doc. 29).

**F.**    ***Silva v. Swift*, No. 4:19-cv-286-RH/MJF (N.D. Fla. June 21, 2019) ("*Silva VI*")**

On June 21, 2019—the same day that Silva initiated *Silva V*—Silva filed the present case. *Silva VI*, No. 4:19-cv-286-RH/MJF (N.D. Fla. June 21, 2019). Silva's initial complaint was eighty-one pages in length and included thirty-seven pages of exhibits. (ECF No. 1). Silva initially named two defendants—Swift and TASRM.

Silva concedes that he brought this action in the Northern District to avoid having his case handled by Middle District judges who rendered decisions adverse to Silva. In Silva's words: "I refused to file in the middle district of Florida again due to the enormous corruption involved in all my cases I've filed there." (ECF No. 4 at 43). Silva also states, "I wanted a different venue because all judges up into this point have denied me my 4th and 15th amendment right to due process." (*Id.* at 7).

In his first amended complaint—which was eighty-nine pages in length—Silva alleged that the two United States District Court Judges whom presided over his cases in the Middle District of Florida conspired with Swift's counsel to violate Silva's Fifth Amendment and Fourteenth Amendment right to due process. (ECF No. 4 at 16, 21, 23). Silva also alleged that Swift and others who are not parties to this action violated various federal criminal statutes.

The undersigned struck Silva's first amended complaint from the record because it violated Federal Rules of Civil Procedure 8(a)(2) and 10(b). (ECF No. 67). The undersigned provided Silva with an opportunity to replead his complaint pursuant to the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Northern District of Florida. On February 7, 2020, Silva filed his second amended complaint which the undersigned again struck from the record because it violated Federal Rules of Civil Procedure 8(a)(2) and 10(b). (ECF Nos. 70, 71).

On February 13, 2020, Silva filed his third amended complaint. (ECF No. 72). In his third amended complaint, Silva added James Douglas Baldridge as a defendant and did not name TASRM as a defendant.[10] Silva alleges that Swift and Baldridge violated his Fifth, Fourteenth, and Seventh Amendment rights during the proceedings of this case as well as *Silva III*. Specifically, Silva alleges that when Baldridge filed a motion to dismiss in this case and in *Silva III*, that the motions to dismiss resulted in the trademarks at issue "not [being] declared fraudulent," which violated his rights to due process and his right to a jury trial. Additionally, Silva alleges that Taylor Swift and Douglas Baldridge conspired to violate his Fifth, Fourteenth, and Seventh Amendment in violation of 42 U.S.C. § 1985(2)-(3). Finally, Silva alleges that "Taylor swift has paid Doug Baldridge millions of dollars in retainers over 3 years and 6 lawsuits to obstruct both 1989 trademarks" in contravention of 18 U.S.C. § 1964(c), the civil Racketeer Influenced and Corrupt Organizations Act ("RICO").

Swift has moved to have the District Court declare Silva a vexatious litigant. (ECF No. 75). Swift supplemented her motion to declare Silva a vexatious litigant four times. (ECF Nos. 84, 91, 95, 104).

---

[10] On May 26, 2020, the undersigned granted Silva's motion to have James Douglas Baldridge dropped as a defendant from this action. (ECF No. 105).

## II.    Discussion

Federal courts possess an inherent power "to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances." *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1994) (quoting *Tripati v. Beaman*, 878 F.2d 351, 352 (10th Cir. 1989)). Federal courts have both the "inherent power and the constitutional obligation to protect their jurisdiction" from conduct of vexatious litigants which "impairs their ability to carry out Article III functions." *Procup v. Strickland*, 792 F.2d 1069, 1073 (11th Cir. 1986) (en banc) (per curiam).

The All Writs Act is a statutory recognition and confirmation of this power. It provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a); *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172, 98 S. Ct. 364, 372 (1977); *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1099 (11th Cir. 2004). The All Writs Act "is a codification of the federal courts' traditional, inherent power to protect the jurisdiction they already have." *Klay*, 376 F.3d at 1099 (citing *Procup*, 792 F.2d at 1074). The Act empowers courts to enjoin litigants who are abusing the court system by harassing an opposing party. *Martin-Trigona v. Shaw*, 986 F.2d 1384, 1386-87 (11th Cir. 1993); *In re Oliver*, 682 F.2d 443, 445 (3d Cir. 1982) (holding that the All

Writs Act authorizes district courts to issue orders restricting meritless cases); *In re Hartford Textile Corp.*, 681 F.2d 895, 897 (2d Cir. 1982) (noting that the Act empowers courts to provide injunctive relief to protect against vexatious litigants); *Harrelson v. United States*, 613 F.2d 114, 116 (5th Cir. 1980) ("The district court has the power under 28 U.S.C. § 1651(a) to enjoin litigants who are abusing the court system by harassing their opponents.").

"The requirements for a traditional injunction do not apply to injunctions under the All Writs Act because a court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns." *Klay*, 376 F.3d at 1100. "A history of litigation entailing 'vexation, harassment and needless expense'" which entails "'an unnecessary burden on the courts and their supporting personnel'" is sufficient to support an order deeming a party a vexatious litigant. *In re Martin-Trigona*, 737 F.2d 1254, 1262 (2d Cir. 1984) (quoting *In re Hartford Textile Corp.*, 681 F.2d at 897). In determining whether a vexatious litigant's access to the courts should be limited, courts should consider at least the following factors:

(1) whether the litigant has been afforded notice and an opportunity to respond to a motion to declare him a vexatious litigant;

(2) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits;

(3) the litigant's motive in pursuing the litigation and whether he has an objective good faith expectation of prevailing;

(4) whether the litigant is represented by counsel;

(5) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and

(6) whether a lesser sanction would be adequate to protect the courts and other parties. *Ringgold-Lockhart v. Cty. of Los Angeles*, 761 F.3d 1057, 1062 (9th Cir. 2014); *Croomer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 817-20 (4th Cir. 2004); *Brow v. Farrelly*, 994 F.2d 1027, 1038-39 (3d Cir. 1993); *De Long*, 912 F.2d at 1147; *In re Powell*, 851 F.2d 427, 431 (D.C. Cir. 1988); *Procup*, 792 F.2d at 1073; *Safir v. United States Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986); *Green v. Warden, United States Penitentiary*, 699 F.2d 364, 368-70 (7th Cir. 1983); *Pavilonis v. King*, 626 F.2d 1075, 1079 (1st Cir. 1980).

### A.    Notice and an Opportunity to Respond

Before a court declares a litigant to be vexatious and restricts his right to access a court, the court should ensure that the litigant had notice that the court might act in such a manner and an opportunity to be heard. *Ringgold-Lockhart*, 761 F.3d at 1062; *De Long*, 912 F.2d at 1147. Here, on February 27, 2020, Swift filed her motion to declare Silva a vexatious litigant. (ECF No. 75). Thus, Silva has had notice for at least three months that the court might grant this motion. Silva also responded

to this motion on March 5, 2020. (ECF No. 80). Silva, therefore, has had notice and an opportunity to respond. Insofar as Silva can file objections to this report and recommendation, he also will be afforded another opportunity to be heard on this issue.

### B.    <u>Silva's History of Litigation</u>

A court also must take into consideration "the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits." *Safir*, 792 F.2d at 24; *Ringgold-Lockhart*, 761 F.3d at 1062; *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1058 (9th Cir. 2007); *see Croomer*, 390 F.3d at 818.

Silva now has filed six civil actions against Swift, her attorneys, or TASRM. All six lawsuits are based on Silva's assertion that the Patent and Trademark Office issued two "fraudulent" trademarks to TASRM. Silva has abused the legal process by filing six nearly identical actions in two federal districts. Silva's abuse has gone on for more than three years. Such conduct is sufficient to warrant an injunction limiting a litigant's right to initiate additional civil actions. *See Klayman v. DeLuca*, 712 F. App'x 930, 932 (11th Cir. 2017) (noting that vexatious litigation had occurred when the plaintiff had initiated three separate cases against his ex-wife); *Shell v. U.S. Dep't of Housing & Urban Dev.*, 355 F. App'x 300, 308 (11th Cir. 2009) (holding that the "district court did not abuse its discretion in imposing" an injunction because the "district court referenced at least seven cases that had been filed" by plaintiff,

"all of which had been dismissed, many on grounds of *res judicata*"); *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1295 (11th Cir. 2002) (holding that "three or four lawsuits over one employment relationship" was sufficient to warrant an injunction); *Traylor*, 805 F.2d at 1421 (noting that the district court properly employed an injunction when a litigant had filed three civil actions and two adversarial proceedings in bankruptcy).

Additionally, Silva's conduct throughout his litigation with Swift, *et al.* has consistently entailed efforts to antagonize and harass the respective Defendants and counsel. In the present case, his emails to opposing counsel are filled with threats, insults, and expletives, even though the Middle District previously chastised Silva for such conduct.[11]  For example:

- On July 1, 2019, Silva e-mailed Baldridge, stating: "im in a lawsuit vs kaite their law firm and doug himself these emails are inadmisslbe in court due to conflict of interest so go fuck yourself" and "did you not see all this coming the horrible life youve lived did you honestly think it would ever get any better these last two years was just a dream I created for you a dream that will become your nightmare." (ECF No. 75-28 at 2).

- On July 5, 2019, Silva emailed Baldridge stating: "im going to Harding place one last time to try and talk this out . . . I just don't think my mother would have want to legally destroy someone like I could do to you . . . ill be in ten. next Wednesday." (ECF No. 75-30).[12]

---

[11] As of February 27, 2020, Swift's attorneys state that "Silva has sent over eighty bizarre, threatening, and/or improper emails." (Doc. 75-1 at 24).

[12] Apparently, Swift's mother lived at a home in Tennessee located on "Harding Place." (ECF No. 41 at 1).

- On July 8, 2019, Silva emailed Baldridge stating: "ill be in tenn on Wednesday to pick up proof of service on tas management this is it Alison lets see how much courage you truly have a face to face at Harding place." (ECF No. 75-31).

- On August 29, 2019, Silva emailed Swift's attorneys: "Alison made 400,000,000 off of illegal trademarks . . . do you honestly think she is going to get off with a slap on the write or for Alison her bottom (joke :PP)" and "if she apologizes for being a huge bitch I may consider a settlement although it was never about the money but about the principle." (ECF No. 75-37).

- On October 14, 2019, Silva emailed Swift's attorneys: "[I']ve decided i dont want to fight this lawsuit anymore . . . i will have a face to face at Harding place on Friday or Saturday of this week . . . i would like to speak with Andrea swift alone." "[T]his lawsuit will not end well for 6 judges, 3 lawyers and Taylor swifts career i don't want any of it, i want her to apologize . . . im in perfect position to squash u like a bug." (ECF No. 75-39).[13]

- On October 18, 2019, Silva emailed Swift's attorneys: "i will be at harding place on sunday . . . i not going to harding place for a settlement i want to ask her how her health is doing" and "this is not a trick i want a face to face with swift before i legally take everything from her, i will also be unarmed . . . this lawsuit doesn't have to end ending careers it can end in kindness." (ECF No. 75-41).

- On December 13, 2019, Silva emailed Swift's attorneys: "so either you answer the complaint and admit to many crimes or don't and lost 189,000,000 talk about between and rock and a hard place lol, so at the end of all this ill be able to come after about 400 million of your money have 20 years of charges pushed aginest both of you and as of right now disbar 7 federal judges for being oath barker public servants." (ECF No. 75-43).

---

[13] Apparently Andrea Swift is Taylor Swift's mother.

- On December 24, 2019, Silva emailed Swift's attorneys: "you just cost the careers for 8 judges 3 lawyers and of course your own the state of Florida would never move . . . at least i was able to secure one last Christmas with your lovely irish mother, so you can go to Ireland on xmas to hurt me but not to stop me for suffering." (ECF No. 75-46).

- On January 14, 2020, Silva emailed Swift's attorneys: "im calling 13 management in 20 mins lets see if Alison has the grapes." (ECF No. 75-49).

Consistent with statements contained in his emails, on October 20, 2019, Silva traveled to the residence of Swift's mother and deposited items at her security gate.[14] (ECF No. 41 at 2). Silva even filed a notice with the court admitting that he travelled to Tennessee on October 20, 2019. (ECF No. 44). Silva stated that he had "good cause" for the trip because he "wanted to check on the well being of swifts mother," and he was going to "leave a federal summons to legal inform her of the pending lawsuit." (*Id.*).

Moreover, on April 28, 2020, Swift filed a supplement to her motion to declare Silva a vexatious litigant that stated "in the past month, Silva has sent over forty emails—including over thirty emails between the hours of 10:00 p.m. and 8 a.m.—to defense counsel. (ECF No. 91 at 2). The most recent emails typically discuss Silva

---

[14] The items Silva left included a summons for Swift, a copy of Swift's 1989 album cover, and an "affidavit" from Silva. (Doc. 41 at 2). Swift's counsel alleges that Swift's family alerted local law enforcement officials and increased security at the residence.

performing a "citizen's arrest" on Swift, Silva's plan to again visit Swift's family's home, and various "medical cures" for Swift's mother's cancer. (*Id.*). For example:

- On March 29, 2020, Silva emailed Swift's attorneys: "lol I can tell the future lol" and attached a photoshopped picture of Swift in an orange prisoner uniform and handcuffs. (ECF No. 91-1 at 3).

- On March 29, 2020, Silva emailed Swift's attorneys: "1st use of a judges void order manga carta if you continue this I will take everything from all of you and send you all to prison for life, I want an apology from swift she needs to apologize for letting you post those pics of my cousins in that lawsuit my Instagram is . . . have her dm though proxy account say this is Alison I never wanted anything from you besides an apology Alison speaking with me will not affect if I dismiss this case or not nor do I want any advantages from speaking with u take care ;)" (ECF No. 91-1 at 7).

- On April 1, 2020, Silva emailed Swift's attorneys: "you can click on anything blue in that last email and the studies will show up I think I can save andrea finleys life or atleast prolong it atleast 6 months." (ECF No. 91-1 at 11).[15]

- On April 1, 2020, Silva emailed Swift's attorneys: "I don't want her to get too excited but I think I can slow taylor swifts mothers cancer down to a slow rawr or even reverse it altogether im a basic scientist an alchemist/chemis….everyday that goes by the cancer wins alittle more this will stop it." (ECF No. 91-1 at 13).

- On April 1, 2020, Silva emailed Swift's attorneys: "see ya in two weeks Alison ;) :P"." (ECF No. 91-1 at 20).

- On April 3, 2020, Silva emailed Swift's attorneys: "im submitting this tomorrow you wont beat me so stop tying im not worried about this lawsuit anymore or atleast for the time being its not my main concern i

---

[15] Attachments to Swift's motion to declare Silva a vexatious litigant indicate that Silva emailed Swift's attorneys eight separate times on April 1, 2020.

spent the last 3 months studying cancer, i figure thats why alison is so mean all the time because her mother is sick ive decided id like to help improve her mothers health dont get chemo or radiation again that will only make it worse doctors get paid to treat a diseases NOT CURE THEM i believe this remedy i made can help CURE andrea swifts aliments not just treat youre given doctor more then 6 years to heal your mother i but the best treatment is only stalling the cancer my treatment can reverse it i almost died if not for this treatment u al almost dident have to deal with me anymore alison but i held on and here i am today now i just have to decide weather i want to sit back and take all your money or risk myself once agin and travel to harding place to speak with you face to face do i take the cowards way out and sit here and wait a few months for my victory or do I come an attempt to help your mom ill tell you in a email tomorrow why i want to help your mother it has to do with the mother i lost.. but theres more to the story the cancer treatments you have used the last 6 years isent working not to mention if she makes it threw this convid 19 outbreak she would not last long after your indictment alison youve put me in a very bad stop i should sit back and collect my millions while sending you away forever but something is telling me to help your mother i feel cursed with this kind spirit sometimes i would have got so much more joy and happiness out of life if i was as mean as you alison you once said you wouldent allow fame to change u swift i guess that was a lie... i still might just sit back and what your demise haven't decided" (ECF No. 91-2 at 9).

- On April 28, 2020, Silva emailed Swift's attorneys: "ive decided to come see you tonight Alison this is it im leaving NC now be there in Harding place in 7 hours so lets say midnight tonite ;) I think its better to meet at night then the day :)" (ECF No. 95-1 at 2).

- On May 2, 2020, Silva emailed Swift's attorneys: "the judges silence proves your crimes to be ture, its been 3 years and 2 months I sick of fighting these cases, asshole judge frank has conspired agest my civil rights and cost me to lose 189 million in a default judgement, ill be there at 6 pm to have you arrested at heading place dear Alison swift :) bitch…..5/2/2020 the day taylors swift career is over by her own crimes mwhahahahah see you soon Taylor Swift ;)" (ECF No. 95-2 at 2).

- May 4, 2020, Silva emailed Swift's attorneys: "A strong argument can be made that the right to make a **citizen's arrest** is a constitutionally protected right under the Ninth Amendment as its impact includes the individual's natural right to self preservation and the defense of the others. Indeed, the laws of **citizens arrest** appear to be predicated upon the effectiveness of the Second Amendment. Im in Nashville now see you soon ;)" (ECF No. 100-1 at 2) (emphasis in original).

- On May 5, 2020, Silva emailed Swift's attorneys: "ill be at this hotal the next week 10 miles from Harding place ill have Alison arrest within the next week ;) enjoy the new filing u fuck" (ECF No. 100-5 at 2).

- On May 12, 2020, Silva emailed Swift's attorneys: "i knew you was going to rat me out that's why I left for TENN. a few hours ago see you soon Alison :) wear something black with pin strips lol" (ECF No. 101-1 at 2).

- On May 12, 2020, Silva emailed Swift's attorneys: "you will be arrested long before that no contact order mwhahah." (ECF No. 101-2 at 2).

- On May 14, 2020, Silva emailed Swift's attorneys: "im in Nashville now ive spent all morning talking to police and detectives, we will be there in one hour tell your guards to stand down, your misery alison has only just begun. (ECF No. 104-4 at 2).

- On May 19, 2020, Silva emailed Swift's attorneys: "so yesterday I was a hour and a half into my trip to ten when I got pulled over for not displaying tag properly, dark teny, I had a weed pipe in the car and had to toss so out the window ;) long story short the cops was going to crucif me with tickets then I handed him a 4 page affidavit and with all your crimes and he called 2 cars for back up then 5 min later he sent me on the way without anything and to be to get the hell out of there." (ECF No. 104-9 at 2).

- On May 19, 2020, Silva emailed Swift's attorneys: "i cant wait anymore atleast one of my family members is being abused, i need to go save them Alison and your going to help me…" (ECF No. 104-11 at 2).

Consistent with statements contained in his emails, on May 19, 2020, Silva "drove across state lines to a Swift family home in Nashville, Tennessee, wearing a bullet proof vest, and unlawfully came upon the Swift's property." (ECF No. 104 at 1). Silva was arrested for trespass and later made bail. On May 26, 2020, Silva filed a document titled "Plan B" wherein he stated the following:

> I figured I wouldn't get a fair shot at this case so I would perfectly plan a scenario where I get illegally and wrongfully arrested creating more causes of action in the process,

> On May 19th I drove to handing place to serve swift her lawsuit and to even enforce a citizens arrest in the process (unlikely though), anyway I foreshadowed that I would be illegally arrested, I brought a affidavit and a copy of the lawsuit to a house Taylor swift bought in 2011 for a family member, its also a place of her abode and most likely place she would be.

> When I arrived I was met a[t] the gate by two armed private security, I asked is swift going to come out or am I going to call the police) was a option for her to either surrender to my arrest or surrender to the police, im an ENPF a naturally good police negotiator, soon after I was arrested, My Master plan had gone off without a hitch almost too perfect mwhahah,

> See I knew Doug baldride would parrot ANYTHING AND EVERTHING I SAY or email, so with that knowledge id inform him of my intentions of not only serving swift but possibly making a citizens arrest.

> The trap was set, prior to my arrival swift and everyone at that house knew I was coming for a non-criminal purpose but they had me falsely arrested, Taylor swift my dear rival you've given me 3 more avenues to sue you regardless what happens in this case ill explain in you're soon to be horror of the reality at hand.

> . . . .

<u>1st file a new 1983 lawsuit in the NDOF stemming from my illegal arrest and
search,</u>

 . . . .

<u>2nd I can sue in a federal court in Tennessee</u>

 . . . .

<u>And 3rd im going to ask for a fully trial in my trespass case and force Taylor
Alison swift to testify, so I can trap her in her wrongful arrest crimes and
obstruction crimes as well I will also make her entire family testify to see who
could fall to her RICO conspiracy.</u>

(Doc. 106 at 2-4, 16-18) (emphasis in original). Silva's conduct consistently and

unapologetically entails efforts to antagonize and harass Defendant and counsel.

Silva's history of litigation in this case and his five other federal cases supports the

imposition of an injunction precluding Silva from filing additional actions unless

and until he receives approval from the court.

### C.    <u>Silva's Motive for Litigating</u>

A court also should consider "the litigant's motive in pursuing the litigation,

*e.g.*, does the litigant have an objective good faith expectation of prevailing?" *Safir*,

792 F.2d at 24. "In many cases, courts must rely on circumstantial evidence to

determine a litigant's motive. *Cuellar v. United States*, 553 U.S. 550, 567 n.8, 128

S. Ct. 1994, 2005 n.8 (2008). Not in Silva's case. Silva explicitly stated his motive

for this litigation—he is waging "psychological warfare" against Swift.

- "3 years ago when I started to contact [Swift] over her fraudulent mark she was weak and pathetic never standing up for herself . . . it drove me crazy to see such a lovely talented women be so weak so I began a campaign of psychological warfare against swift." (*Silva III*, Doc. 55 at 5).

- "ive been committing (psychological warfare) . . . intended to reduce an opponent's morale." (*Silva III*, Doc. 22-2).

- "It was an elaborate hoax with one simple goal to commit psychological warfare against the defendant and [defense counsel]." (*Silva III*, Doc. 27 at 16).

Furthermore, the emails Silva has sent to defense counsel over the past three years, as well as Silva's attempts to meet with Swift and her mother, strongly suggest that Silva is motivated by an obsession or fascination with Swift, rather than a good faith belief that the two trademarks were obtained through fraud.

Additionally, it is highly unlikely that Silva has a good faith belief that he will prevail in this action. Three of Silva's civil actions were dismissed by various courts, and two other cases Silva voluntarily dismissed after it became apparent that the respective court likely would dismiss the case:

- *Silva I* (voluntarily dismissed after the court ordered Silva to show cause why his action should not be dismissed for failure to effect service of process on defendant).

- *Silva II* (dismissed for frivolity and for failure to state a viable claim on which relief could be granted).

- *Silva III* (dismissed for Silva's deliberate and repeated violations of court orders).

- *Silva IV* (dismissed with prejudice for failure to state a claim).

- *Silva V* (voluntarily dismissed by Silva after the magistrate judge recommended that the case be dismissed for failure to state a claim upon which relief may be granted and *res judicata*).

Because Silva is not motivated by a good-faith expectation of prevailing in this litigation, it is appropriate to enjoin him from further vexatious litigation.

### D.    <u>Silva is Not Represented by Counsel</u>

Courts also should consider whether a purportedly vexatious litigant is or was represented by counsel. *Safir*, 792 F.2d at 24; *Ringgold-Lockhart*, 761 F.3d at 1062 (quoting *Molski*, 500 F.3d at 1058). Courts generally are more lenient with *pro se* litigants because they are not versed in the law and may not realize that their filings lack merit. But a *pro se* litigant may not hide behind his *pro se* status when it is clear that he is abusing the legal process to harass opposing parties or their counsel. *See Shell*, 355 F. App'x at 302; *Traylor*, 805 F.2d at 1421; *Procup*, 792 F.2d at 1070. The judges of the Middle District of Florida ordered Silva to conduct himself with decorum and to address opposing counsel with civility:

- In *Silva III*, the magistrate judge instructed Silva: "you have to conduct yourself within the rules and the requirements of the decorum of the court." (*Silva III*, Doc. 36 at 50).

- In *Silva III*, the magistrate judge told Silva: "I've already talked to you about the types of statements, the inflammatory statements, the improper statements and anything that could be involved as a threat . . . [d]on't get distracted with calling people names and talking about how you're going to destroy this or do that. You don't need to do that." (*Silva III*, Doc. 36 at 48).

- In *Silva III*, the court entered a protective order which stated: "Plaintiff's communications with Mr. Baldridge shall not contain any inappropriate statements, threats of any kind, or insults. Plaintiff shall conduct himself with civility, respect, and proper behavior." (*Silva III*, Doc. 34).

Despite the restraint shown by the judges of the Middle District, Silva admitted that he intentionally violated the orders of those judges. According to a decision issued by Judge Howard, Silva "willfully and egregiously violated" a magistrate judge's order not to contact Swift when he drove to "Tennessee in an attempt to make contact with Taylor Swift." (*Silva III*, Doc. 66 at 6). Judge Howard found that Silva "drove to the home of Swift's mother in Tennessee and delivered a package containing a cell phone, a photograph, a stuffed animal, and a letter addressed to Swift, inviting her to text him. (*Id.*). Silva also sent eleven emails to defense counsel informing counsel of his plans and requesting contact with Swift. (*Id.*). For example, Silva sent the following email to defense counsel in direct contravention of the magistrate judge's order:

> I don't think Alison has the courage to meet me face to face . . . im putting my lawsuit on the line to prove a point if u try to get case dismissed off this ill appeal I don't care about case anymore I never did I only cared about saving the family I love life is more then money and fame im calling out Alison swifts courage (meet me at the gate Alison on sunday) if u have the guts sunday at 3 . . . ."

(*Silva III*, Doc. 48-4 at 2).

In emails to defense counsel, Silva conceded that he knew that his conduct violated the magistrate judge's order and he understood this could result in the district court dismissing his case. Silva explicitly stated that he would continue to violate court orders. *See* (*Silva III*, Doc. 52 at 2) ("When I think to myself did I just blow a 100 million dollar lawsuit to show Alison swift kindness, I think to myself was it worth it and under the same circumstances would I do it again ? the answer is yes.") (emphasis in the original); (*Silva III*, Doc. 55 at 5) ("I only broke your order judge Howard to try to protect Alison swift because I felt sorry for her, and under the same circumstances would do it again.").

In light of Silva's egregious conduct and intentional refusal to obey court orders, Silva's *pro se* status does not preclude a narrowly-tailored injunction designed to curtail frivolous litigation.

### E.    Silva has Caused Needless Expense to Other Parties and has Posed an Unnecessary Burden on Federal Courts

Courts also must consider "whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel." *Safir*, 792 F.2d at 24; *Ringgold-Lockhart*, 761 F.3d at 1062 (quoting *Molski*, 500 F.3d at 1058).

Silva has inundated the various courts with irrelevant documents and frivolous motions. In the instant case alone, Silva has filed the following documents:

- a complaint which was 81 pages in length, in addition to 37 pages of exhibits and comments, (ECF No. 1).

- a first amended complaint which was 89 pages in length, and which was struck from the electronic docket after the undersigned determined that it violated the Federal Rules of Civil Procedure as well as the Local Rules, (ECF No. 4).

- a frivolous motion for partial summary judgment in which Silva asked this court to invalidate the trademarks at issue in this case, (ECF No. 13).

- an affidavit in support of his motion for partial summary judgment, (ECF No. 14).

- a notice of summons and complaint to be served by the U.S. Marshal, (ECF No. 15).

- a frivolous motion to strike TASRM's motion to dismiss, (ECF No. 20).

- a frivolous motion for sanctions against Baldridge for his "illegal and unethical conduct" in the various lawsuits filed by Silva against TASRM and Swift, (ECF No. 21).

- a notice that all of the Middle District court orders that Silva violated were issued by judges who "obstructed justice in some way," and that if this court were to dismiss this action, both the District Court Judge and the undersigned would be charged with various criminal offenses, (ECF No. 22).

- an affidavit in support of Silva's motion to strike, in which, among other things, Silva catalogues the various crimes that various judges allegedly committed in adjudicating Silva's cases, (ECF No. 23).

- a supplement to the motion to strike and the motion for sanctions, in which Silva accuses Baldrige and Judge Howard of having committed "multiple felonies," (ECF No. 25).

- a "Response of opposition to motion," in which Silva states, among other things, that filing a motion to dismiss in this case constituted a criminal act that was also unethical and a violation of Silva's civil rights, (ECF No. 26).

- a "Motion to set hearing," in which Silva asks for a hearing before the court rules on any motions, and warns that any judgment or order issued by the court without first granting Silva a hearing would be "void by law and as worthless at the paper it was written on," (ECF No. 30).

- an 18-page "Notice," the purpose of which remains unclear, (ECF No. 31).

- a second "Motion to set hearing," (ECF No. 32).

- a second "Motion for Sanctions," which is 41 pages in length, in which Silva asks this court to sanction Baldridge for his "illegal and unethical conduct," (ECF No. 42).

- an "Affidavit" in support of the motion for sanctions, (ECF No. 43).

- a "Notice" that Silva travelled to Tennessee on October 20, 2019, purportedly to "check on the well being of swifts mother," and noting that her mother's health likely would not "hold up" if Silva presses this case to a trial or "pushed federal criminal charges against swift," (ECF No. 44).

- a 14-page "Notice," reminding the court that Silva has requested a jury trial, (ECF No. 47).

- a frivolous "Motion for Summary Judgment," (ECF No. 77).

- a frivolous "Affidavit" wherein Silva alleges that Swift, Baldridge, and 8 federal judges committed various federal crimes, (ECF No. 78).

- a motion to set a hearing, (ECF No. 79).

- a frivolous "Motion to Recuse" Judge Frank, (ECF No. 85).

- a "motion to Stay" wherein Silva alleges that Swift and Baldridge are "subject to citizen's arrest" and that "it would be unconstitutional to add no contact to the order <u>because a order of no contact would prevent a potential citizen's arrest</u>," (ECF No. 93).

- a frivolous "Response to Motion" in which Silva alleges that Swift, Baldridge, and 9 federal judges should be facing "life in a federal penitentiary." Additionally, Silva alleges that he can "reverse Andrea Finley's cancer . . . with turmeric powder, black pepper, wheat grass, tea and Graviola," (ECF No. 94).

- a frivolous 22-page "Motion to Recuse" Judge Frank, (ECF No. 97).

- a frivolous "Affidavit" accusing Judge Frank of violating 18 U.S.C. § 242 and stating "youre a asshole that cost me to lose 189,000,000 dollars in a default judgment . . . you criminally tossed my legitament complaint you're a oath-breaker public servant," (ECF No. 98).

- a 17-page "Notice" which, among other things, informed this court that "u can actually sue a sitting judge for his judicial actions taken on the bench, I suggest to the court it takes it nexts steps very carefully," (ECF No. 99).

- a 15-page "Notice" stating "go to bottom of page 4, were bitch Howard (oath breaker) states . . . ." and "I had a right to bring this case or the case before asshole (frank) tossed my legitmate complaint." Silva also states "you're career belongs to me now (you bitch)," (ECF No. 102).

These filings waste judicial resources insofar as the court is required to read and address them. Parties should not "waste valuable judicial resources unnecessarily . . . ." *In re Stone*, 986 F.2d 898, 904 (5th Cir. 1993). Justice does not require courts to waste their time on frivolous cases. *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1255 (11th Cir. 2008). Silva's six duplicative lawsuits have placed

an unnecessary burden on both the Northern District of Florida and the Middle District of Florida. The time and effort the courts have been required to expend on Silva's cases could have been used to address meritorious claims of other litigants.

Additionally, the defendants in these actions have been burdened for three years insofar as they have been forced to respond to Silva's claims, motions, and "notices." Opposing counsel have been burdened by their duty to read and respond to Silva's frivolous motions, and counsel's clients must bear the expense of this never-ending litigation. "A vexatious litigant does not have a . . . right to abuse official processes with baseless filings in order to harass someone to the point of distraction or capitulation." *Riccard*, 307 F.3d at 1298. Furthermore, according to Swift, Silva's attempts to visit the home of Swift and/or her mother have forced Swift to increase security measures. Although a narrowly-tailored injunction would not prevent Silva from attempting such visits in the future, it would reduce some of the burden placed on Swift and her attorneys.

### F.   A Lesser Sanction Would be Inadequate

Finally, this court also must consider whether a lesser sanction might be efficacious. *Safir*, 792 F.2d at 24; *Ringgold-Lockhart*, 761 F.3d at 1062 (quoting *Molski*, 500 F.3d at 1058). In this case, it is likely that other sanctions would be inadequate to protect the U.S. District Court for the Northern District of Florida and the parties from future meritless or bad-faith claims and motions. First, based on

information provided by Silva in a motion to proceed *in forma pauperis*, he likely cannot pay a monetary penalty.[16] Second, even if Silva could afford to pay a monetary sanction, he might do so simply to continue his efforts to harass Swift, with whom he appears to be obsessed. Third, Judge Howard dismissed *Silva III* with prejudice as a sanction for Silva's outrageous conduct. Even that did not deter Silva.[17] This indicates that anything short of an injunction likely would be ineffective. Even a narrowly-tailored injunction may prove inefficacious, but one should be attempted before deploying a greater sanction.

### G. The Scope of the Proposed Injunction

In cases like the one presented here, various courts have imposed injunctions that require vexatious litigants to: (1) include in any future complaints a certification that the plaintiff never previously brought an action asserting the same claims; and (2) move for and obtain leave from the District Court to file a civil action against the relevant parties. *Riccard*, 307 F.3d at 1298; *Cofield v. Ala. Pub. Serv. Comm'n*, 936

---

[16] On June 21, 2019, Silva moved for leave to proceed *in forma pauperis*. In his motion, he stated that he was unemployed and did not own any real property. (*Silva V*, Doc. 2).

[17] Silva explicitly stated that he would again engage in this type of conduct. *See* (*Silva III*, Doc. 52 at 2) ("When I think to myself did I just blow a 100 million dollar lawsuit to show Alison swift kindness, I think to myself was it worth it and under the same circumstances would I do it again ? the answer is yes.") (emphasis in the original); (Doc. 55 at 5) ("I only broke your order judge Howard to try to protect Alison swift because I felt sorry for her, and under the same circumstances would do it again.").

F.2d 512, 518 (11th Cir. 1991) (noting that the screening of claims prior to filing still afforded a litigant with access to the courts); *Filipas v. Lemons*, 835 F.2d 1145, 1146 (6th Cir. 1987) (holding that requiring a vexatious litigant to obtain leave of the court before filing any further complaints does not violate the First Amendment); *In re Martin-Trigona*, 737 F.2d at 1262, 1258 n.3 (noting that the plaintiff was required to attach a certification "that the claim he wishes to present is a new claim never before raised by him in any court"). In light of Silva's history of vexatious litigation summarized above, an injunction of this scope is warranted in this case.

## III.  Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.     Defendant's Motion to Declare Plaintiff a Vexatious Litigant (ECF No. 75), be **GRANTED IN PART** and **DENIED IN PART**.

2.     The District Court issue an injunction requiring Plaintiff, before filing in the United States District Court for the Northern District of Florida any new civil actions against TASRM, Taylor Swift, or Defendant's counsel (Venable, LLP, James Douglas Baldridge, and Katie Wright Morrone), to:

   a.     move for and obtain leave from the District Court to file a complaint;

b.    attach to any motion to file a complaint a copy of any injunctive

order imposed by the District Court in this case; and

c.    attach a sworn affidavit certifying that the claim Plaintiff wishes

to present is a new claim never before raised by him in any court.

At Panama City, Florida, this <u>1st</u> day of June, 2020.

/s/ *Michael J. Frank*

**Michael J. Frank**
**United States Magistrate Judge**


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636. The parties also are advised that if they dispute the accuracy of any facts taken from judicially-notice documents, or if they otherwise wish to be heard on the propriety of the court taking judicial notice of those facts, they must raise this issue in an objection to this report and recommendation.**